UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRAYTON PURCELL LLP, | | No. C-04-4995 EMC |
| Plaintiff, | | |
| v. | | **ORDER RE ARBITRATION AWARD** |
| RECORDON & RECORDON, *et al.*, | | **(Docket Nos. 59-60, 64-65)** |
| Defendants. | | |

On November 24, 2004, Plaintiff Brayton Purcell LLP filed suit against Defendant Recordon & Recordon, alleging copyright infringement, unfair competition under California and federal law, false advertising, and common law misappropriation. Brayton Purcell later amended the complaint to add Apptomix, Inc. and Jonathan Lee as Defendants. On May 10, 2005, all parties participated in a settlement conference during which they agreed to submit the dispute to binding arbitration. The arbitration award was filed with the Court on May 31, 2006. Thereafter, Defendants informed the Court that they objected to the award. The parties disputed whether the Federal Arbitration Act ("FAA") or the Court's ADR Local Rules governed and thus whether Defendants' objection was timely. Pursuant to this Court's order, the parties also filed supplemental briefs as to what law would govern if the Court were to hold that the parties participated in private arbitration and that neither the ADR Local Rules nor the FAA applied.

Having considered the parties' briefs, the Court hereby orders as follows.

## I. FACTUAL & PROCEDURAL BACKGROUND

On March 30, 2005, the Court referred the case to Judge Zimmerman for a settlement conference as part of the Court's ADR program. The settlement conference, held on May 10, 2005, resulted in the "parties agree[ing] to binding arbitration." Docket No. 43 (civil minute order). The parties further agreed to a timeline for arbitration and a procedure for selecting an arbitrator. Based on the agreed procedure, because the parties could not mutually agree on an arbitrator, they submitted lists of proposed arbitrators to Judge Zimmerman, who then selected M. John Carson to arbitrate the dispute.

The case was then arbitrated. Mr. Carson entered an award in favor of Brayton Purcell on May 17, 2006. Two weeks later, Brayton Purcell filed a copy of the award with the Court and asked for entry of judgment. During a status conference held on June 8, 2006, Defendants announced that they would have objections to the arbitration award. On July 31, 2006, Defendants filed a joint brief regarding arbitrability under the FAA. Plaintiff filed a response brief on August 10, 2006. The parties also filed supplemental cross-briefs pursuant to a Court order issued on October 10, 2006.

## II. DISCUSSION

A.  Private v. Court-Sponsored Arbitration

As a threshold issue, the Court must decide whether the parties, when they agreed to binding arbitration, agreed to private arbitration or Court-sponsored arbitration to which the ADR Local Rules would apply. Defendants argue the former; Brayton Purcell the latter.

Court-sponsored arbitration is provided for by the Alternative Dispute Resolution Act of 1998 ("ADR Act") and this District's ADR Local Rules. *See* 28 U.S.C. § 651 *et. seq.* (2006); ADR L.R. 3-4(a). In Court-sponsored arbitration, arbitrators are appointed by the Court from a panel of listed neutrals. *See* ADR L.R. 4-3(a). The arbitrators are appointed following the entry of a Court order referring the case to arbitration. *See id.* Arbitration may be binding or nonbinding. If the former, however, there must be a written stipulation by the parties, which must be approved by the presiding judge. *See* ADR L.R. 4-13.

Under the ADR Local Rules, parties are not required to participate in Court-sponsored ADR (arbitration or otherwise). The Local Rules specifically provide that "[a] private ADR procedure . . .

2

1   may be substituted for a Court program if the parties so stipulate and the assigned Judge approves."
2   ADR L.R. 3-4(b). Whereas Court-sponsored ADR is subject to the ADR Local Rules, private ADR
3   proceedings are not. *See* ADR L.R. 3-4(b).

4   In the instant case, the parties participated initially in Court-sponsored ADR, namely, a
5   settlement conference with Judge Zimmerman. The record reflects that, as a result of this settlement
6   conference, the parties agreed to submit the dispute to binding arbitration. While the parties never
7   provided a formal stipulation to the Court waiving the right to a trial de novo, subsequent joint case
8   management conference statements confirm that both parties agreed to binding arbitration and Court
9   approval of the binding arbitration was reflected by a civil minute order dated February 1, 2006.

10   During the settlement conference, the parties also agreed on discovery, a timeline for the
11   arbitration, and a procedure to select an arbitrator. The parties agreed to exchange lists of three (or
12   more) arbitrators. If an arbitrator was not agreed upon by June 10, 2005, the parties would submit
13   their lists to Judge Zimmerman who would select the arbitrator from those lists. According to the
14   briefs, the parties submitted their lists to Judge Zimmerman and he subsequently selected Mr.
15   Carson as the arbitrator. Mr. Carson is not one of the listed neutrals from the Court- sponsored ADR
16   program.

17   Given the above facts, the Court concludes that the parties' agreement to submit to binding
18   arbitration was an agreement to submit to private, not Court-sponsored, arbitration. In Court-
19   sponsored arbitration, arbitrators are appointed by the Court from a panel of listed neutrals; Mr.
20   Carson is not one of the listed neutrals. None of the other procedural prescriptions under the ADR
21   Local Rules were followed. Other than Judge Zimmerman's minute order reflecting the parties'
22   agreement, the Court was not asked to and did not enter any orders contemplated by the ADR Local
23   Rules. Because the arbitration to which the parties agreed was not part of the Court-sponsored
24   program, the ADR Act and corresponding Northern District ADR Local Rules do not apply.
25   Accordingly, Brayton Purcell's contention that Defendants failed to timely object to the arbitrator's
26   award under the ADR Local Rules is moot.

B.     Applicability of the FAA

Although the Court agrees with Defendants that the parties engaged in private, and not Court-sponsored, arbitration, it does not agree that the FAA governs the arbitration. The FAA states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). In short, application of the FAA is limited to arbitration provisions in (1) contracts evidencing a transaction involving interstate commerce or (2) maritime transactions. *See id.* Defendants do not provide any authority that the FAA is applicable to an agreement to arbitrate arising out of a tort claim and made only after the dispute arose. In fact, there is authority that holds otherwise.

In *Brown v. Hyatt Corp.*, 128 F. Supp. 2d 697 (D. Haw. 2000), the plaintiff sued a hotel for negligence. *See id.* at 698. The parties agreed to submit their dispute to binding arbitration, as evidenced by a letter from defendant's claim representative to plaintiff's counsel. *Id.* at 699. Thirty-nine days after the filing of the arbitration award, the plaintiff filed a motion to modify the award. *See id.* The issue before the court was whether the timeliness of the motion was controlled by the FAA or by Hawaii state law. *See id.* at 699-700. The court clarified that the FAA addresses written provisions to arbitrate any potential future dispute, "not . . . agreements to go to arbitration that are made after a dispute is alive." *Id.* at 701. Because the agreement to arbitrate was not in the context of a commercial contract or maritime transaction, the FAA did not apply. *See id.* at 700.

Similar to *Brown,* the parties here agreed to arbitrate during the course of litigation after the disputed transaction arose. There is no contract evidencing a transaction involving commerce and certainly there is no maritime transaction; rather, there is only an agreement to resolve an already-existing dispute through arbitration. Consistent with the statutory language of the FAA and *Brown*, the Court finds that the FAA does not apply to the parties' private agreement to arbitrate in the context of settlement discussions in this lawsuit.

4

C.  Revocation of the Agreement to Arbitrate

As a threshold question, prior to determining what substantive law applies to enforcement of the arbitration award, the Court must address Defendants' contention that the agreement to arbitrate itself was unenforceable.

Both parties agree that California contract law governs the question of enforceability of the agreement to arbitrate. The agreement was made in California and both parties are residents of California. Defendants argue that the private arbitration agreement is not enforceable under California contract law because a mutual mistake exists as to a material term of the agreement and because the private arbitration agreement is unconscionable.

1.  Mistake

Defendants contend first that the agreement is unenforceable because a mutual mistake of both parties existed at the time the agreement was formed. Defendants claim that the parties were mutually mistaken as to what law governed the arbitration agreement and subsequent award. Defendants contend that this mistake was material to the agreement and therefore the agreement is void and unenforceable.

California Civil Code Section 1689(b)(1) states that "[a] party to a contract may rescind the contract . . . [i]f the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake." Cal. Civ. Code § 1689(b)(1) (2006). A mistake of law exists when all parties are mistaken in the understanding of a law in the same way, or when one side is mistaken in their understanding of the law and the other side, aware of the mistake, does not correct it. *See id.* § 1578 (2006); *see also Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1421 (Cal. Ct. App. 2d 1996) (noting the same). A mistake of fact exists when a mistake consists of "an unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or, the belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed." Cal. Civ. Code § 1577 (2006).

Defendants do not, in their supplemental brief, specify whether the purported mutual mistake was one of law or fact. Regardless, whether a mistake is one of law or fact, the mistake must be to a material element of the contract in order for there to be rescission of the agreement. *See Bellwood*

*Discount Corp. v. Empire Steel Bldg. Co.,* 175 Cal. App. 2d 432, 435 (Cal. Ct. App. 2d 1959) ("Mistake, either of law or fact, as grounds for rescission of contract, must affect the execution and material elements of the contract and not merely some collateral matter."). Mistake as to a material matter must affect an essential element of the contract such that a mistaken party would not have entered into the contract except for the mistake. *See Hanna v. Steinman*, 159 Cal. 142 (Cal. 1911) (holding that the subject matter of the agreement was not a "purely collateral matter, but rather went to the essence of the contract" and therefore the contract was properly rescinded); *see also* 1 Witkin, Sum. Cal. Law Contracts § 260 ("If there is a mutual assent as to the subject matter and parties to the agreement, a contract results; but it may be voidable and subject to rescission where there is a harmful mistake as to some basic or material fact that induced the plaintiff to enter into it."); *id.* § 261 (commenting that, in *Hanna*, "the court distinguished between mistake as to a *collateral matter* constituting an inducement, such as an expectation of future profits, and mistake as to a *material matter,* affecting an essential element of the contract") (emphasis in original).

The asserted mistake as to whether the FAA or ADR Local Rules applies is not material. As held herein, Defendants' objections to the arbitration award are not time barred. The material aspects of the arbitration -- *e.g.*, the fact that it was binding and the process of selecting the arbitration -- were in fact mutually agreed upon. Moreover, as discussed below, the grounds for objecting to the ultimate award are not materially different under the FAA, the California Arbitration Act ("CAA") or common law. There was no mutual mistake as to any material term of the agreement to arbitrate.

2.  Unconscionability

Defendants further argue that the agreement to arbitrate is not valid because it is unconscionable. California Civil Code Section 1670.5(a) states that, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5 (2006). Both procedural and substantive unconscionability must be present in order for a court to refuse to enforce a contract

6

based on unconscionability. *See Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1105 (9th Cir. 2003) ("[A] contract to arbitrate is unenforceable under the doctrine of unconscionability when there is 'both a procedural and substantive element of unconscionability.'"); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1533 (Cal. App. Ct. 1997) ("The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."). Procedural and substantive unconscionability do not need to be equally present; where more evidence of one is present, less evidence of the other is required. *See Amendariz,* 24 Cal. 4th at 114 ("[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.").

        a.     Procedural Unconscionability

With respect to procedural unconscionability, a court evaluates the process of making the agreement and considers any oppression arising from an inequality of bargaining power. *See Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 113-14 (Cal. App. Ct. 2d 2004) (holding an arbitration agreement in an employment contract unconscionable because the employee was not given an opportunity to negotiate the terms or to refuse to sign). A court considers whether significant provisions are hidden in the agreement and whether there was meaningful negotiation or merely an "empty choice." *See Circuit City Stores, Inc.*, 335 F.3d at 1106. In *Circuit City Stores*, the Ninth Circuit explained that, "[a]t a minimum, a party must have reasonable notice of his opportunity to negotiate or reject the terms of a contract, *and* he must have an actual, meaningful, and reasonable choice to exercise that discretion." *Id.* at 1106 (emphasis in original). The court held that the arbitration agreement was procedurally unconscionable because it was presented on an "'adhere or reject' basis." *Id.* at 1107.

In the instant case, there is nothing to suggest that the agreement to arbitrate was procedurally unconscionable. There was no oppression or inequality of bargaining power in making the agreement to submit to arbitration. This was not a contract of adhesion. All parties were represented by counsel. The agreement to arbitrate was reached in the context of a Court-supervised settlement conference over which Judge Zimmerman presided.

Defendants argue that the surprise resulting from their incorrect expectation that the FAA governed the agreement renders the agreement to arbitrate procedurally unconscionable. However, in the context of procedural unconscionability, "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them, usually the party with the superior bargaining position." 1 Witkin, Sum. Cal. Law Contracts § 332. Defendants' argument of surprise does not fall within the parameters of procedural unconscionability law. Their argument of surprise is essentially their argument of mutual mistake, which the Court rejects. Because, as noted above, Defendants must show both procedural and substantive unconscionability in order for the agreement to be rendered unenforceable, Defendants cannot establish unconscionability.

b. <u>Substantive Unconscionability</u>

Even if Defendants could show procedural unconscionability, there is no evidence of substantive unconscionability. When evaluating substantive unconscionability, the courts look at the terms of the contract at the time the contract was made. *See Circuit City Stores, Inc.,* 335 F.3d at 1107 (citing *A&M Produce Co., v. FMC Corp.,* 135 Cal. App. 3d 473, 487 (1982)). Substantive unconscionability exists where the terms of the agreement or the result of the agreement are one-sided or overly harsh as to "shock the conscience." *Id.* For example, in *Martinez*, the court stated that, where all employee claims were subject to arbitration but all employer claims were not, this was one-sided and therefore the agreement was substantively unconscionable. *See Martinez,* 118 Cal. App. 4th at 114.

In the instant case, none of the terms of the arbitration agreement were overly harsh or resulted in a one-sided determination. Both parties accepted the judgment of the arbitrator as the binding conclusion of the dispute. Both parties accepted the risk inherent in submitting to arbitration. There was no one-sided risk or overly harsh cost to one party. Moreover, irrespective of what law governs -- the ADR Local Rules, FAA, CAA, common law -- neither side had *a prior* advantage going into arbitration.

8

D.   CAA or Common Law Governs the Underlying Arbitration Award

As discussed above, the Court has determined that the ADR Act and corresponding ADR Local Rules do not apply to the parties' private agreement to arbitrate. Therefore, the Court rejects Brayton Purcell's argument that Defendants' objection to the arbitrator's award is untimely under the ADR Local Rules. However, as discussed above, the Court has also concluded that, contrary to Defendants' argument, the FAA is not applicable to the parties' private agreement to arbitrate. The question is what law the Court should apply in assessing Defendants' objections to the underlying arbitration award.

Based on the supplemental briefs, both parties appear to agree that, if the FAA does not govern the arbitration, then either the CAA or common law should apply. The Court notes that both the CAA and the common law provide for similar grounds for vacating an arbitration award. *See* Cal. Civ. Proc. Code § 1286.2 (2006) (providing that grounds for vacating an award include the following: "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"; "[t]he rights of the party were substantially prejudiced by misconduct of a neutral arbitrator"; and "[t]he rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title"); *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132-33 (9th Cir.2003) ("We may vacate an arbitration award only if the conduct of the arbitrators violated the Federal Arbitration Act, or if the award itself is 'completely irrational' or 'constitutes manifest disregard of the law.'"); 4 Am. Jur. 2d Alternative Dispute Resolution § 234 (stating that an arbitration award may be vacated under the common law where the arbitrator has exceeded jurisdiction or authority, where there is corruption, fraud, or gross error, or where the award violates public policy).

Defendants have yet to identify the precise legal and factual bases for objecting to the arbitration award. Accordingly, the Court orders Defendants to file their formal motion to vacate the arbitration award and state the precise bases therefor (together with all supporting evidence) within one week of the date of this Order. Brayton Purcell shall then have one week thereafter to file an

9

opposition, and Defendants three court days to file a reply. The Court shall set a hearing if it deems necessary.

### III. CONCLUSION

For the foregoing reasons, Defendants are permitted to file a motion to vacate in accordance with this Order.

IT IS SO ORDERED.

Dated: October 31, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California

10