UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAYTON PURCELL LLP,<br><br>    Plaintiff,<br><br>    v.<br><br>RECORDON & RECORDON, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-04-4995 EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO VACATE ARBITRATION AWARD**<br><br>**(Docket Nos. 67-69)** |

Defendants Recordon & Recordon, Apptomix, Inc., and Jonathan Lee have moved to vacate the arbitration award in favor of Plaintiff Brayton Purcell, LLP. Having reviewed the parties' briefs and accompanying submissions, as well as all other evidence of record, the Court hereby **DENIES** both Recordon's motion to vacate and Apptomix and Mr. Lee's motion to vacate.

**I. DISCUSSION**

A.    Legal Standard

In its order of October 31, 2006, the Court concluded that the Federal Arbitration Act ("FAA") is not applicable to the instant case. The parties agreed that, if the FAA does not govern, then either the California Arbitration Act ("CAA") or the common law should apply. *See* Order of 10/31/06, at 9. In their motions to vacate, Defendants do not ask for vacatur based on the CAA but rather on the common law only. More specifically, Defendants argue that the arbitration award

should be vacated because it is completely irrational and constitutes manifest disregard of the law.[1] *See Coutee v. Barington Capital Group, LP*, 336 F.3d 1128, 1132 (9th Cir. 2003) ("We may vacate an arbitration award . . . if the award itself is 'completely irrational' or 'constitutes manifest disregard of the law.'").

While the Ninth Circuit has not elaborated on what is meant by "completely irrational," at least one appellate court has indicated that criterion is satisfied when there is no basis in the record for the arbitrator's decision. *See NF&M Corp. v. United Steelworkers of Am.*, 524 F.2d 756, 760 (3d Cir. 1975); *Schiavone Constr. Co. v. Impresit-Girola-Lodigiani, Inc.*, No. 91 Civ. 8455 (JSM), 1992 U.S. Dist. LEXIS 5154, at *7-8 (S.D.N.Y. Apr. 20, 1992) (noting the same); *see also Tripi v. Prudential Sec., Inc.*, 303 F. Supp. 2d 349, 355-56 (S.D.N.Y. 2003) (noting that defendant did not "point[] to any facts in the record to support such a bizarre award [by the arbitrators]"). The Ninth Circuit has emphasized that "[m]anifest disregard of the *facts* is not an independent ground for vacatur," although "a federal court will not confirm an arbitration award that is legally irreconcilable with the undisputed facts" and "an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard of the law." *Coutee*, 336 F.3d at 1133 (emphasis added). A court is not to reweigh evidence in reviewing an arbitrator's decision. *See id.* at 1134 (noting that the arbitrators had considered a factual dispute and resolved it in favor of the plaintiffs;

---

[1] The Court acknowledges that, in its motion to vacate, Recordon also argues that the arbitration award should be vacated because it is arbitrary and capricious. However, the arbitrary and capricious language does not appear in cases discussing vacatur as a matter of common law. The language has typically been used in contexts that are not at issue here, *e.g.*, labor arbitration. *See, e.g.*, *Alhambra Foundry Co. v. General Warehousemen's Union*, 687 F.2d 287, 289-90 (9th Cir. 1982) (stating that "[a]n arbitrator is confined to the interpretation and application of the collective bargaining agreement and his award is legitimate only so long as it draws its essence from the agreement"; finding that, in the case under consideration, the arbitration award was neither arbitrary nor capricious); *Oil, Chem. & Atomic Workers, Internat'l Union, Local No. 4-228 v. Union Oil Co. of Cal.*, 818 F.2d 437, 440 (5th Cir. 1987) (noting that enforcement of an arbitration award should be denied "if the arbitrable decision did not draw its essence from the collective bargaining agreement"; adding that "the essence standard is to be interpreted expansively so as to uphold the award, rather than restrictively" so that "[i]f the arbitrator's decision is free from arbitrary or capricious interpretation, it will normally be upheld") (internal quotation marks omitted).

Moreover, as a practical matter, the Court discerns no real substantive difference between Recordon's argument that the award is arbitrary and capricious and its argument that the award is completely irrational or constitutes manifest disregard of the law. *See also* Recordon's Mot. at 5 ("This Court has endorsed the 'arbitrary and capricious' bases for vacatur of arbitration awards under the theory that an award can be completely irrational.").

1 adding that "[w]e have no authority to reweigh the evidence"); *see also Wallace v. Buttar*, 378 F.3d
2 182, 193 (2d Cir. 2004) (emphasizing that the Second Circuit does not recognize manifest disregard
3 of the evidence as a proper ground for vacatur; adding that, "[t]o the extent that a federal court may
4 look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose
5 of discerning whether a colorable basis exists for the panel's award so as to assure that the award
6 cannot be said to be the result of the panel's manifest disregard of the law").

As for "manifest disregard of the law," the Ninth Circuit has instructed that it "means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it."[2] *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995); *see also Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 674 (8th Cir. 2004) ("If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to law, and said that he was doing so because he thought the law unfair, that would be an instance of 'manifest disregard.'"); *Montes v. Shearson Lehman Bros.*, 128 F.3d 1456, 1461 (11th Cir. 1997) (To manifestly disregard the law, one must be conscious of the law and deliberately ignore it.").

B.    Recordon's Motion to Vacate

In its motion to vacate the arbitration award, Record argues that the award is both completely irrational and constitutes a manifest disregard of the law because (1) Recordon is an innocent infringer and yet the arbitrator still ordered Recordon to pay over $24,000 in statutory damages – *i.e.*, "over eighty per cent of the statutory maximum allowed under the code for an innocent infringer," Recordon's Mot. at 7; (2) the arbitrator's award of attorney's fees includes work performed by Brayton Purcell's own employees and is based on an unreasonable number of hours and an unreasonable hourly rate; and (3) the arbitrator's total award against both sets of defendants

---

[2] In its motion, Recordon asserts that, "when an arbitration award reflects a manifest disregard for the law, and if substantial injustice would result if the award were allowed to stand, it should not be sustained." Recordon's Mot. at 6. The language of substantial (or significant) injustice language does not appear in any published Ninth Circuit case and appears to be used instead by the Fifth Circuit. *See, e.g.*, *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 762 (5th Cir. 1999) (indicating that, where it is manifest that an arbitrator acted contrary to the applicable law, then the arbitration award should still be upheld unless it would result in significant injustice).

3

(*i.e.*, Recordon and Apptomix/Mr. Lee) gives Brayton Purcell a "windfall" of more than $65,000 and overcompensates Brayton Purcell for any possible damages (actual damages being "zero"). *Id.* at 9.

The Court shall address each of these arguments below but, as a preliminary matter, notes that, in its reply brief, Recordon raised for the first time additional arguments as to why the arbitration award should be vacated. More specifically, Recordon argued that the arbitrator failed to issue a mutual, definite and final award because he did not address whether or not Brayton Purcell was entitled to permanent injunctive relief and, except for the claim of copyright infringement, he failed to make a ruling on the causes of action asserted in the complaint (*e.g.*, unfair competition, common law misappropriation). Recordon further argued that the arbitrator's rulings as to the other defendants Apptomix and Mr. Lee are completely irrational and constitute a manifest disregard of the law.

The Court refuses to entertain each of these arguments as a basis for vacatur because they were raised for the first time in Recordon's reply brief and in direct contravention of a prior order. *See* Order of 10/31/06, at 9 ("order[ing] Defendants to file their formal motion to vacate and state *the precise bases therefor* (together with all supporting evidence) within one week") (emphasis added). Moreover, the merits of each of the arguments are weak. For example, because the arbitrator did not award Brayton Purcell permanent injunctive relief,[3] there is no harm or injury to Recordon, and res judicata would likely bar Brayton Purcell from seeking relief for the same claim in a future suit. To the extent that there was an injunction, *see* Docket Nos. 29, 33, it was only preliminary relief and did not survive the litigation. Similarly, because the arbitrator did not make any rulings in favor of Brayton Purcell on the claims other than copyright infringement, there is no harm or injury to Recordon, and res judicata would likely be a bar to Brayton Purcell.[4] Finally,

---

[3] Brayton Purcell apparently gave up pursuing permanent injunctive relief during arbitration. *See* Gosse Decl., Ex. A at 1, 8 (Brayton Purcell's Phase I opening brief in arbitration) (noting that "injunctive relief has already been granted" and that "Recordon's website no longer has an elder abuse section, nor does it even list elder abuse among the numerous types of injury cases that the firm says it handles").

[4] Similar to above, Brayton Purcell gave up pursuing its claims other than copyright infringement. *See* Gosse Decl., Ex. A at 19 (Brayton Purcell's Phase I opening brief in arbitration) (stating that, because of the difficulty in proving actual damages, "and since injunctive relief has already been granted, plaintiff is not at this time pursuing its claims for deceptive advertising, unfair

4

Recordon has not shown that it has standing to challenge the arbitration award with respect to rulings entered against the other defendants in this case.

The Court therefore turns to the arguments presented in Recordon's opening brief.

1. <u>Innocent Infringer</u>

Recordon challenges first the arbitrator's decision on statutory damages. According to Recordon, because the arbitrator did not find that Recordon's infringement was willful, "[t]he only conclusion that can be derived . . . is that Recordon's infringement was innocent." Recordon's Mot. at 7. In spite of this, the arbitrator still ordered Recordon to pay more than $24,000 in statutory damages – "over eighty per cent of the statutory maximum allowed under the code for an innocent infringer." *Id.*

The Court rejects Recordon's argument that the arbitrator's decision should be vacated on this basis. First, the arbitrator's award of some $24,000 in statutory damages is neither completely irrational nor constitutes a manifest disregard of the law because the award falls within the range provided for by the copyright statute for nonwillful infringement. *Cf. UMG Recordings, Inc. v. Disco Azteca Distr., Inc.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006) (noting that copyright infringement is a strict liability tort and that "[a] plaintiff need not demonstrate the defendant's intent to infringe the copyright in order to demonstrate copyright infringement"). Under 17 U.S.C. § 504(c)(1), a copyright owner may recover "an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." *Id.* § 504(c)(1). Even when a court finds that the copyright infringer is "innocent," the court may still award as much as $30,000, although the minimum award is reduced from $750 to $200. *See id.* § 504(c)(2).

Recordon is correct that the arbitrator chose to make an award on the higher end of the range for nonwillful infringement. However, this decision was not completely irrational nor did it constitute a manifest disregard of the law. One of the factors that may be considered in determining the proper amount of statutory damages is the expenses saved and profits reaped by the defendant in

---

competition, or misappropriation").

connection with the infringement. *See Columbia Pictures Indus. v. T&F Enters.*, 68 F. Supp. 2d 833, 840 (E.D. Mich. 1999) (listing the following factors to consider: (1) the expenses saved and profits reaped by the defendants in connection with the infringements; (2) the revenues lost by the plaintiffs as a result of the defendants' conduct; (3) the infringers' state of mind whether willful, knowing, or merely innocent; and (4) the goal of deterring wrongful conduct). In the instant case, the arbitrator awarded Brayton Purcell $24,000 based on its development expenses (*i.e.*, the expenses Brayton Purcell incurred in creating the copyrighted website). It was not unreasonable for the arbitrator to conclude that Recordon saved approximately $24,000 by not having to develop the website that it copied from Brayton Purcell.

Recordon argues still that "[t]he development costs claimed by [Brayton Purcell] covers a period of time when [it] was developing all five of [its] web sites, most of which . . . [had] nothing to do with the Elder Abuse page at issue in this case." Recordon's Mot. at 8. As noted above, however, a court does not reweigh evidence in reviewing an arbitration award. Even if it could, Recordon has provided to the Court no evidence whatsoever to substantiate this claim. *See* Order of 10/31/06, at 9 ("order[ing] Defendants to file their formal motion to vacate and state the precise bases therefor (*together with all supporting evidence*) within one week") (emphasis added).

As a final point, the Court notes that the arbitrator's silence as to whether Recordon's infringement was willful does not necessarily mean that Recordon was an innocent infringer. On this issue, where the arbitrator's award is silent, the Court must nonetheless affirm the award if it is "able to discern any colorable justification for the arbitrator's judgment, even if that reasoning would be based on an error of fact or law." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 212 n.8 (2d Cir. 2002). Where the arbitrator's decision is subject to more than one possible reading, the award must be confirmed "so long as, under one of those readings, the judgment rests upon a colorable interpretation of law." *Id.*

As noted in one well-recognized legal authority, "intermediate between willful and innocent conduct lies the domain of 'knowing infringement.'" 4-14 Nimmer on Copyright § 14.04[B][1][a]. As argued by Brayton Purcell, there are legitimate reasons why the arbitrator could have declined to make a finding of innocence. That is, "[e]ven if Recordon was not actually aware of the

6

1 infringement, Recordon should have known better than simply to trust and accept that Apptomix, a
2 website development company, could create on its own, a sophisticated and detailed elder abuse
3 information website overnight." Opp'n at 8; *see also* Gosse Decl., Ex. A at 11 (Brayton Purcell's
4 Phase I opening brief in arbitration) ("Apptomix's provision of numerous pages of meticulously
5 researched text regarding legal rights and resources, accompanied by graphics, for the bargain price
6 of $1,187.00 (which also included monthly maintenance fees) could not reasonably have been
7 viewed by the principals of Recordon & Recordon as anything other than miraculous, and was in
8 and of itself sufficient to put them on notice that the materials were not obtained lawfully.").

2. <u>Fee Award</u>

Recordon argues next that the arbitrator's award of attorney's fees was completely irrational and constituted a manifest disregard of the law. Recordon attacks the fee award on various grounds but does not dispute that, under the copyright statute, "[a] court in its discretion may allow the recovery of full costs by or against any party," which includes "a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505.

First, Recordon argues that the arbitrator improperly included as part of the fee award some $23,000 incurred by Brayton Purcell employees. According to Recordon, a party representing itself cannot recover its own attorney's fees. *See* Recordon's Mot. at 8 (citing, *inter alia*, *Kay v. Ehrler*, 499 U.S. 432 (1991)).[5] In *Kay*, the Supreme Court did conclude that an individual attorney who represents himself in a successful civil rights action cannot be awarded a reasonable attorney's fee as part of his costs. However, courts have typically held that *Kay* does not bar an award of fees to a law firm representing itself (as opposed to an individual representing himself). *See, e.g.*, *Baker & Hostetler LLP v. United States DOC*, No. 05-5185, 2006 U.S. App. LEXIS 31454, at *34 (D.C. Cir. Dec. 22, 2006) (emphasizing that the Supreme Court made clear in *Kay* that "the exception for *individual* plaintiffs who represent themselves does not apply to *organizations*") (emphasis in original). In fact, in *Bond v. Blum*, 317 F.3d 385 (4th Cir. 2003), the Fourth Circuit concluded that,

---

[5] Recordon also cites *Trope v. Katz*, 11 Cal. 4th 274 (1995); however, that case is not relevant because it addresses attorney's fees pursuant to a state statute, *i.e.*, California Code of Civil Procedure § 1717.

7

1 under the copyright statute, fees could be awarded to a law firm that represented itself because the
2 principles laid out in *Kay* "do not apply in circumstances where entities represent themselves
3 through in-house or *pro bono* counsel." *Id.* at 399. Therefore, although the point may be arguable,
4 the arbitrator's decision to include as part of the fee award the $23,000 incurred by Brayton Purcell
5 employees was neither completely irrational nor did it constitute a manifest disregard of the law.

6 Recordon contends nevertheless that the arbitrator's fee award should be vacated because it
7 was based on an unreasonable number of hours and an unreasonable hourly rate. Recordon bears the
8 heavy burden of showing that the arbitrator's decision was either completely irrational or constituted
9 a manifest disregard of the law. Because Recordon has made no real effort to establish a manifest
10 disregard of the law – *i.e.*, that the arbitrator recognized the applicable law[6] but then ignored it – the
11 Court focuses on the question of whether the fee award is completely irrational. Recordon has failed
12 to demonstrate such.[7]

13 First, there was evidence before the arbitrator justifying the number of hours claimed by
14 Brayton Purcell. Recordon admits as much but suggests that the evidence should be rejected
15 because it consisted of "self-serving declarations." Recordon's Mot. at 10. However, as noted
16 above, it is not the Court's task to reweigh evidence; moreover, the Court is hard pressed to imagine
17 what other evidence Brayton Purcell could present to substantiate the number of hours claimed
18 except for "self-serving declarations" (with billing records or summaries attached).

19 Second, the hours claimed by Brayton Purcell were not patently unreasonable and therefore
20 the arbitrator's decision to credit those hours was not completely irrational. For example, spending

---

[6] *See, e.g.*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (stating that fees under § 505 should be awarded to a prevailing party only as a matter of the court's discretion; adding that discretion should be exercised in light of considerations identified in *Hensley v. Eckerhart*, 461 U.S. 424 (1983)); *Hensley*, 461 U.S. at 433-34 (stating that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"; indicating that a court should exclude from a fee award hours that are excessive, redundant, or otherwise unnecessary); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (holding that the hourly rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in the relevant community").

[7] The Court acknowledges Brayton Purcell's contention that the errors claimed by Recordon are not the proper subject of a motion to vacate, findings of fact being within the exclusive province of the arbitrator. *See* Opp'n at 10. However, because of the "completely irrational" standard, the Court entertains Recordon's argument.

8

68 hours to conduct a factual investigation, draft a complaint, *and* draft a preliminary injunction motion is not unreasonable. This is less than two weeks of one attorney working fulltime (*i.e.*, 80 hours). Likewise, spending 91 hours – close to two weeks of one fulltime attorney – to prepare initial disclosures, case management and settlement conference statements, an amended complaint, and correspondence as well as to participate in negotiations is not obviously unreasonable.

Recordon points out that some of the tasks should not have taken much time (*e.g.*, for the amended complaint, Brayton Purcell simply had to add Defendants Apptomix and Mr. Lee) and further emphasizes that little no (or at least little) discovery was conducted in the case; but this ignores the fact that other tasks could well have taken a significant amount of time, including the drafting of the preliminary injunction motion and the settlement conference statement, not to mention the opposition to Recordon's motion to dismiss or transfer. Recordon also asserts that the litigation was unnecessarily protracted because Brayton Purcell could have easily settled the case by dropping its "outrageous" settlement demands for $150,000 in damages, plus attorney's fees. Recordon's Mot. at 11. But it was not irrational for the arbitrator to award fees nonetheless. Brayton Purcell's settlement demands were not beyond reason given that it had a strong argument in support of willful infringement – *i.e.*, Brayton Purcell's website was essentially copied word for word. Under 17 U.S.C. § 504(c)(2), a court may award as much as $150,000 for an act of willful infringement. *See* 17 U.S.C. § 504(c)(2) ("In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $ 150,000."). At bottom, 211.5 hours of attorney time spent on a case that was litigated for more than a year is not so unreasonable as to render the arbitrator's decision to credit those hours completely irrational.

Finally, Recordon contends that "the arbitrator's award of a $410.00 averaged hourly rate for plaintiff's attorney is irrational and contrary to the public policy of this state." Recordon's Mot. at 11-12. Because Recordon has not cited any authority demonstrating that an arbitration award may be vacated under the common law (or even the CAA) on the basis that the award is contrary to public policy – let alone identify any specific public policy at issue – the Court focuses only on the issue of whether the fee award is completely irrational. As to Recordon's argument that the hourly

1 rate was unreasonable, Recordon's main contention seems to be that it is unreasonable for a lawyer
2 who graduated from law school in 2001 to have an hourly rate of $280 for 2004, $315 in 2005, and
3 $345 in 2006. *See* Gosse Decl., Ex. E (Brayton Purcell's Phase II opening brief) (McHugh Decl. ¶¶
4 4-5). While these rates may be high and exceed what this Court might have awarded were it to
5 review the issue *de novo*, it was not completely irrational for the arbitrator to award the rates.
6 Brayton Purcell submitted competent evidence to the arbitrator supporting the claimed rates. Thus,
7 it cannot be said that there was no evidence supporting the rates at issue.

        3.      <u>Windfall and/or Overcompensation</u>

9 Finally, Recordon argues that the arbitrator's total award against both sets of defendants (*i.e.*,
10 Recordon and Apptomix/Mr. Lee) gives Brayton Purcell a "windfall" of more than $65,000 and
11 overcompensates Brayton Purcell for any possible damages (actual damages being "zero").
12 Recordon's Mot. at 9. Neither argument is persuasive.
13 As to the first argument, Recordon claims that the arbitrator gave Brayton Purcell a windfall
14 of approximately $65,000. *See id.* Recordon arrived at this figure by noting that the arbitrator
15 awarded $183,463 to Brayton Purcell even though Brayton Purcell only asked for $141,633.40 in
16 damages. Excluding the "self-representation fees" of $23,300, Recordon reasons that Brayton
17 Purcell sought $118,333.40 in damages and fees (*i.e.*, $141,633.40 – $23,300 = $118,333.40). The
18 difference between $118,333.40 and $183,463 results in a $65,129.60 windfall in excess of damages
19 sought. The problem with Recordon's windfall argument is that its premise is flawed. The
20 arbitrator's total award against *both* sets of defendants was $183,463. In arbitration, Brayton Purcell
21 asked for $141,633.40 against *Recordon only*. With respect to Apptomix and Mr. Lee, Brayton
22 Purcell asked for an additional $283,266.80. *See* Gosse Decl., Ex. E at 12 (Brayton Purcell's Phase
23 II opening brief in arbitration). In other words, the arbitrator awarded only $183,463 to Brayton
24 Purcell even though it asked for twice as much – *i.e.*, $424,900.20.[8]
25 Furthermore, Recordon's windfall argument is problematic because it is predicated on the
26 total award made by the arbitrator with respect to both sets of defendants and Recordon has failed to

---

[8] $141,633.40 + $283,266.80 = $424,900.20.

show that it has standing to challenge that part of the award that pertains to the other defendants, Apptomix and Mr. Lee. Even if Recordon could establish standing, it has failed to show that there was any windfall which would make the award completely irrational. The arbitrator found both sets of Defendants liable for copyright infringement. Recordon has not produced any authority prohibiting the assessment of statutory damages against both sets of Defendants under these circumstances. Furthermore, the statutory damages award against Recordon, as discussed above, was within the range provided for the copyright statute and thus had a reasonable basis. For similar reasons, the statutory damages award against Apptomix and Mr. Lee was within the permissible range (based on the finding of willful infringement) and had a reasonable basis. As for fees and costs, the arbitrator did not make any double award to Brayton Purcell, which arguably would have been completely irrational, but rather allocated the fees and costs between Recordon and Apptomix/Mr. Lee, with the latter paying twice as much are Recordon because of the willful infringement.

As to Recordon's second argument – *i.e.*, that the arbitration award overcompensates Brayton Purcell for any possible damages (actual damages being "zero") – this ignores the fact that, under the copyright statute, a copyright owner may recover statutory damages for infringement, regardless of the actual damages suffered and the infringer's profits.

### 4. Summary

For the foregoing reasons, the Court denies Recordon's motion to vacate.

## C. Apptomix and Mr. Lee

In their motion to vacate, Apptomix and Mr. Lee challenge only the arbitrator's award with respect to Mr. Lee. In his decision, the arbitrator determined that Apptomix and Mr. Lee were jointly and severally liable to Brayton Purcell for $48,654 in statutory damages and $73,655 in fees and costs. Mr. Lee contends that he cannot be held liable as an individual because there is no evidence in the record demonstrating that he is the alter ego of Apptomix. Mr. Lee further asserts that he cannot be held vicariously liable for the willful infringement of Raphael M. Coutinho Tarle (an Apptomix employee). In response, Brayton Purcell argues that the arbitration award should be upheld because there was evidence in the record indicating that Mr. Lee was directly liable for

1 infringement, that Mr. Lee was vicariously liable for infringement, and that Mr. Lee was indirectly
2 liable for infringement under an alter ego theory.

3      Although the arbitrator did not specify the precise basis of his liability finding against Mr.
4 Lee, as noted above, the award must be upheld if there is a colorable justification for the award. *See*
5 *Westerbeke*, 304 F.3d at 212 n.8. Here, the Court upholds the arbitrator's decision because there
6 was evidence and law supporting, at least, Brayton Purcell's argument on vicarious liability. The
7 Ninth Circuit has explained that "[v]icarious copyright liability is an 'outgrowth' of respondeat
8 superior. In the context of copyright law, vicarious liability extends beyond an employer/employee
9 relationship to cases in which a defendant 'has the right and ability to supervise the infringing
10 activity and also has a direct financial interest in such activities.'" *A&M Records, Inc. v. Napster,*
11 *Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).

12      Mr. Lee contends that the arbitrator never found him vicariously liable because the arbitrator
13 never made specific findings as to either (1) the right and ability to supervise or (2) a direct financial
14 interest. Mr. Lee further asserts that "the only evidence submitted to the arbitrator relevant to [the
15 issue of vicarious liability on the part of Mr. Lee] is [his own] declaration," and, in his declaration,
16 he stated that he was not involved in the infringing activity and that he did not have the right and
17 ability to supervise the infringing activity. Apptomix/Lee Mot. at 3.

18      The Court acknowledges that, in his decision, the arbitrator made specific findings as to the
19 right and ability to supervise and a direct financial interest with respect to Apptomix, but not Mr.
20 Lee. However, an arbitrator "need not disclose the facts or reasons behind [an] award." *Bernhardt*
21 *v. Polygraphic Co. of America*, 350 U.S. 198, 204 n.4 (1956); *see also United Steelworkers of*
22 *America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("Arbitrators have no
23 obligation to the court to give their reasons for an award."); *Wise v. Wachovia Sec., LLC*, 450 F.3d
24 265, 268 (7th Cir. 2006) (acknowledging that panel of arbitrators granted summary judgment
25 "without explaining the basis of their decision" but noting that "[a]rbitrators have . . . no duty to
26 explain"); *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200,
27 1206 (9th Cir. 1989) ("The opinion and award the arbitrator writes is a document intended to answer
28 a specific question rather than set forth any legal principles. Accordingly, we do not require labor

arbitrators to make the sorts of explicit or exhaustive 'findings of fact' we demand of district courts; likewise, the reasons for arbitral rulings need not be spelled out in detail. Indeed, 'arbitrators have no obligation . . . to give their reasons for an award' at all."). As previously noted, where there is an omission of any underlying factual finding, the award should be upheld so long as a court can discern any colorable justification for the award. *See Westerbeke*, 304 F.3d at 212 n.8.

Here, the issue of vicarious liability on the part of Mr. Lee was clearly presented to the arbitrator. *See, e.g.*, Gosse Decl., Ex. D at 7 (Brayton Purcell's Phase I reply brief in arbitration) (arguing that Mr. Lee was vicariously liable under the "control plus benefit" test). Therefore, the only question for the Court was whether an award based on vicarious liability could be justified without being completely irrational or a manifest disregard of the law. The Court concludes that it can.

As noted above, Mr. Lee contends that there was no evidence to demonstrate that he had the right and ability to supervise the infringing activity conducted by Raphael M. Coutinho Tarle. *See* Apptomix/Lee Mot. at 3 (citing Lee Decl. ¶ 7). But in his declaration, Mr. Lee does not address whether he had the right and ability to supervising the infringing activity of Mr. Tarle; he simply says that he did not review Mr. Tarle's work. *See* Lee Decl. ¶ 7 ("I never reviewed the individual pages of the Recordon & Recordon website that were created. Mr. Tarle never provided me with any information concerning how the content for the Recordon & Recordon website was being created."). The arbitrator could reasonably have inferred that Mr. Lee had the right and ability to supervise Mr. Tarle given that Mr. Lee was Apptomix's president (not to mention CEO, secretary, and CFO), that Mr. Lee hired Mr. Tarle, and that Mr. Lee fired Mr. Tarle. *See* Lee Decl. ¶¶ 1, 5, 11. Just because Mr. Lee chose not to exercise his right and ability to supervise Mr. Tarle's work does not mean that he lacked the right and ability to supervise.

As for the issue of a direct financial interest in the infringing activity, Mr. Lee does not make any argument that there was no evidence of such. He simply contends that the arbitrator failed to make any finding on the issue. There is a colorable basis for such a finding, however, because some

1 courts have found that a salary is enough for a direct financial interest.[9] Because Mr. Lee was
2 undisputedly Apptomix's president, *see* Lee Decl. ¶ 1, a reasonable inference could have been made
3 that he received a salary. Further, because Mr. Lee was listed as Apptomix's CEO, secretary, CFO,
4 and agent for service of process in the initial filings with the state of California, *see* Gosse Decl., Ex.
5 C at Ex. AA, and because he was evidently the moving force behind Apptomix's lawsuit against Mr.
6 Tarle, *see id.*, Ex. C at Ex. GG, it may be inferred that he has a direct financial interest in Apptomix
7 apart from any salary he may have received as president.

8 The Court therefore denies Apptomix and Mr. Lee's motion to vacate the arbitration award
9 with respect to Mr. Lee. For the same reasons, the Court denies Apptomix and Mr. Lee's motion to
10 correct the arbitration award as it pertains to Mr. Lee. The request for correction is also
11 inappropriate because, under the CAA, correction of an award is limited to "obviously and easily
12 correctable mistake[s] in the award" or "technical problem[s] with the award." *Moncharsh* v. *Heily*

---

[9] *Compare Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 913-14 (D. Conn. 1980) (finding that vice-president and full-time general manager was vicariously liable because he had the responsibility to oversee the day-to-day activities of the station and had direct supervision over the music director and because he "unquestionably had a direct stake in the financial success of the station" – "a practice that would minimize expenses while at the same time not diminish WKND's share of the listening audience would obviously confer an economic benefit on KND Corporation and, in turn, on its key officer and employee"), *and Sailor Music v. Mai Kai of Concord, Inc.*, 640 F. Supp. 629, 633 (D.N.H. 1986) ("[T]here is no dispute that Mr. Yee, as sole shareholder, president, treasurer and director of the Mai Kai was the dominant influence in the corporation and developed the policy for provision of live musical entertainment resulting in the copyright infringement. In addition, he certainly profited financially from the musical performances. The performances generated income for the Mai Kai from which he received a monthly salary. Accordingly, Mr. Yee, personally is jointly liable with Mai Kai for the copyright infringement."), *with Societe Civile Succession Richard Guino v. International Found. for Anticancer Drug Discovery*, No. CV 06-01540-PHX-NVW, 2006 U.S. Dist. LEXIS 80768, at *19 (D. Ariz. Nov. 3, 2006) ("[E]ven if Plaintiff were to allege [in its complaint] such a benefit [as a corporate officer's salary], none of the cited cases establish that an executive salary unaffected by a company's infringing activity can alone satisfy the requirement of direct financial benefit."); *Thoroughbred Software Internat'l, Inc. v. Dice Corp.*, 439 F. Supp. 2d 758, 769 (E.D. Mich. 2006) (finding one individual defendant vicariously liable because, as the major shareholder of the corporate defendant, he derived financial benefit from the infringing acts; however, finding that another individual defendant (the president) was not vicariously liable because he derived no "*direct* financial benefit from the infringing activity" – although his "fortunes rose and fell with the success or decline of the corporation in general," the court required "something more direct, such as proof of 'receiving a percentage of the revenues' flowing from the infringement").

*See also Songmaker v. Forward of Kansas, Inc.*, No. 90-4156-SAC, 1993 U.S. Dist. LEXIS 4392, at *17-18 (D. Kan. Mar. 5, 1993) (noting that "[a] salary earned from the infringing activity is some evidence of a financial interest," although ultimately concluding that the president of a company had a direct financial interest not only because he was the president but also because he was the president of the parent company and his children owned all the shares in the parent company).

1 *& Blase*, 3 Cal. 4th 1, 13 (1992); *see also* Cal. Code Civ. Proc. § 1286.6 (allowing for correction of
2 an arbitration award when "[t]here was an evident miscalculation of figures or an evident mistake in
3 the description of any person, thing or property referred to in the award," "[t]he arbitrators exceeded
4 their powers but the award may be corrected without affecting the merits of the decision upon the
5 controversy submitted," or "[t]he award is imperfect in a matter of form, not affecting the merits of
6 the controversy.").

7 D.   Brayton Purcell's Request for Additional Attorney's Fees and for Prejudgment Interest

8      Finally, the Court addresses Brayton Purcell's request for additional attorney's fees (*i.e.*,
9 post-arbitration fees) and for prejudgment interest (only from the date of the issuance of the
10 arbitration award to the present). To the extent Brayton Purcell seeks additional fees, it should file a
11 separate motion for fees consistent with the Federal Rules of Civil Procedure and other applicable
12 federal law. Any such motion shall be supported and opposed by brief and concise papers.

13      As for prejudgment interest, as noted by Brayton Purcell, such relief is available under the
14 Copyright Act. However, the award of such interest is discretionary. *See Polar Bear Prods. v.*
15 *Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004). In *Polar Bear*, the Ninth Circuit indicated that, in a
16 copyright infringement case, "prejudgment interest may be necessary to discourage needless delay
17 and compensate the copyright holder for the time it is deprived of lost profits or license fees" (*i.e.*, to
18 make the copyright holder whole) and to "remov[e] incentives for copyright infringement." *Id.* at
19 718.

20      Taking into account these factors, the Court concludes that prejudgment interest in the
21 instant case is not warranted. First, the Court does not find that there has been needless delay in this
22 case as a result of Defendants' actions. Defendants, for instance, had a legitimate basis for arguing
23 improper venue and likewise had a legitimate basis for arguing that they were not time barred from
24 moving to vacate the arbitration award. Although the Court has rejected Defendants' arguments in
25 favor of vacatur, it cannot say that Defendants' motions were unjustified. Second, prejudgment
26 interest is not needed to make Brayton Purcell whole given that there was no evidence of Brayton
27 Purcell being deprived of lost profits or license fees as a result of Defendants' infringement. Here,
28 the arbitrator awarded statutory damages, not actual damages. Finally, the award issued by the

arbitrator is an adequate deterrent. As noted above, Recordon was held liable on the higher end of the statutory range for nonwillful infringement, and Apptomix and Mr. Lee were held liable for twice Brayton Purcell's development expenses because of the willful infringement. Together with the attorney's fee award, the total arbitration award is substantial. Were it not for the extremely limited scope of review applicable here, the Court would otherwise have been inclined to scrutinize the size of the award.

## II. CONCLUSION

For the foregoing reasons, Defendants' motions to vacate the arbitration award are denied. For the same reasons, the Court grants Brayton Purcell's request for entry of judgment and directs the Clerk of the Court to enter judgment in this case. The arbitrator's award is confirmed: Recordon is liable to Brayton Purcell for $24,327 in statutory damages and $36,827 in fees and costs; and Apptomix and Mr. Lee are jointly and severally liable to Brayton Purcell for $48,654 in statutory damages and $73,655 in fees and costs. Brayton Purcell should file a separate motion to the extent that it seeks post-arbitration fees in connection with the motions to vacate.

This order disposes of Docket Nos. 67-69.

IT IS SO ORDERED.

Dated: February 6, 2007

EDWARD M. CHEN
United States Magistrate Judge